IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

MARVIN G. MOBLEY,

*Defendant*.

Criminal Action No. ELH-21-00383

## MEMORANDUM OPINION

Defendant Marvin G. Mobley, Jr. is charged with possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count One), and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a), (b)(1) (Count Two).  ECF 1.  He has moved to suppress evidence recovered during the search of his residence on December 16, 2020.  ECF 16 (the "Motion").[1]  The search was conducted pursuant to a warrant issued on December 15, 2020, by then United States Magistrate Judge Thomas DiGirolamo.  The search warrant application was supported by the Affidavit of Special Agent Corey Conyers of the Federal Bureau of Investigation ("FBI").  *See* ECF 28-1 ("Affidavit").

During the search, law enforcement officers recovered a handgun magazine with eleven rounds of 9 mm ammunition, located in a man's shoe in the master bedroom closet; $14,363.00 in U.S. currency found inside a jacket in the closet; paperwork in the defendant's name, recovered from the master bedroom; more than nineteen pounds of marijuana, found under the basement stairs; and cellular telephones that belonged to the defendant.

---

[1] ECF 16 was filed under seal.  A redacted version of the submission is docketed at ECF 18.

Mobley contends that the Affidavit failed to allege facts sufficient to establish probable cause to search his residence.  According to defendant, the allegations of his involvement in a drug trafficking scheme are completely conclusory; there is no basis to establish that evidence would be found at his residence; and, in any event, the information was stale by the time the search warrant was obtained and executed.  ECF 16 at 7-8.  Moreover, Mobley maintains that because the warrant is utterly devoid of probable cause, the search is not saved by the good faith exception to the exclusionary rule, announced in *United States v. Leon*, 468 U.S. 897 (1984).[2]  He has also submitted exhibits.

The government opposes the Motion (ECF 28), supported by exhibits.  Defendant replied. ECF 32.

The Court held a Motion hearing on May 26, 2022, at which argument was presented.  ECF 34.  In light of the argument, the Court requested supplemental briefing on the issue of whether, in analyzing the applicability of the good faith exception to the exclusionary rule, the Court may consider information known to the affiant at the time he submitted the search warrant application but omitted from the Affidavit.  *See* ECF 35.  The government's supplemental brief is docketed at ECF 40.  Mobley's supplemental submission is docketed at ECF 42.  And, both sides replied.  ECF 45 (Mobley); ECF 46 (Gov't).

Thereafter, on July 18, 2022, the Court held another Motion hearing, at which evidence was presented.  ECF 53.[3]  Excerpts of the transcript of the hearing are docketed at ECF 57 and

---

[2] The defendant's primary argument in his Motion (ECF 16) was his claim of entitlement to a *Franks* hearing, under *Franks v. Delaware*, 438 U.S. 154 (1978).  However, in defendant's reply (ECF 32), he abandoned that request.  *See id.* at 3 n.1.

[3] The hearing had been scheduled for June 29, 2022.  Unfortunately, the hearing was postponed when one of the attorneys was diagnosed with COVID-19.

ECF 59.  Additional briefing followed the hearing.  ECF 58 (Mobley's Second Supplement); ECF 60 (Gov't's Second Supplement).  Mobley replied.  ECF 61.  Then, further argument was presented at a hearing held on September 2, 2022.  ECF 62.  Trial is scheduled to begin on September 19, 2022.  ECF 44.

For the reasons that follow, I shall deny the Motion.

## I.    Factual Background[4]

The application for the search warrant was supported by the Affidavit of FBI Special Agent Corey Conyers.  ECF 28-1.  Because the defendant is one of many individuals discussed in the Affidavit.  Conyers requested a total of 33 warrants, authorizing the search of eleven residences, eleven cellular telephones, and eleven individuals.  *See* ECF 28 at 2; ECF 28-1 at 1-3.  Thus, the government characterizes the Affidavit as a consolidated affidavit.

Agent Conyers joined the FBI in September 2018, ECF 28-1, ¶ 6, and was, at the relevant time, assigned to the Baltimore Organized Crime Drug Enforcement Task Force ("OCDEF") Strike Force.  *Id.* ¶ 8.  Agent Conyers's familiarity with drug trafficking does not derive solely from his work as an FBI agent, however.  Prior to becoming an FBI agent, Conyers served for four years as a Special Agent with the Drug Enforcement Administration ("DEA") in New York, where he "conducted large-scale investigations of Drug Trafficking Organizations" ("DTOs").  *Id.* ¶ 9.

In his Affidavit, Conyers recounted his training and experience with both the FBI and the DEA.  *Id.* ¶¶ 6-11.  He has also attended many "training seminars," focusing on narcotics trafficking and "firearm related crimes."  *Id.* ¶ 10.  And, as an FBI Special Agent and as a DEA

---

[4] The factual summary is derived from the parties' briefs as well as the exhibits they submitted, either with the memoranda or at the hearings.  For convenience, I generally cite to submissions appended to the briefs, some of which are duplicates of exhibits offered at the hearings.  And, I utilize the electronic pagination, which does not always correspond to the page number that appears on the actual document.

Special Agent, he has debriefed drug traffickers. *Id.* ¶ 11. Based on Conyers's training and experience, he averred that drug traffickers typically use cell phones to conduct illegal drug activity, and often multiple cell phones, and they store drugs, drug proceeds, and contraband in secure locations, including their residences. *Id.* ¶¶ 12(a-j). In addition, Conyers explained that digital evidence can be maintained and recovered for long periods of time. *Id.* ¶¶ 107-116.

Conyers made clear in the Affidavit that he did not include "every detail of every aspect of the investigation . . . ." *Id.* ¶ 4. Rather, he stated, *id.*: "I have set forth only those facts that I believe are necessary to establish probable cause." And, as noted, the Affidavit pertained to multiple locations and many individuals.

According to Conyers, the OCDETF Strike Force began investigating Ernest Lee Bailey and others in April 2020. *Id.* ¶ 13. Moreover, he averred that Mobley was "believed to be a BAILEY associate." *Id.* ¶ 5(n). Of relevance here, the Affidavit recounted Mobley's prior federal criminal history. According to the Affidavit, Mobley was convicted in the District of Maryland in 2000 of conspiracy to distribute cocaine base, for which Mobley was sentenced to 70 months of imprisonment. And, he was again convicted in the District of Maryland in 2010, for conspiracy to distribute cocaine, for which he was sentenced to 120 months' imprisonment. ECF 28-1, ¶ 5.[5] Moreover, Mobley was on supervised release at the time of the search. *Id.*, ¶ 106.

As the defense points out, ECF 16, n.5, 9, the defendant's second federal conviction actually occurred in 2012, not 2010, and it was for the offense of possession with intent to

---

[5] The 2000 conviction occurred in case BEL-99-0187, which was assigned to Judge Benson E. Legg. The 2012 conviction pertains to case BEL-10-0686. However, on September 17, 2012, the case was reassigned from Judge Legg to Judge J. Frederick Motz, due to the retirement of Judge Legg, and became Case JFM-10-0686. *Id.*; *see* Docket. Then, on September 5, 2018, due to the retirement of Judge Motz, it was reassigned to me, and is now Case ELH-10-068. In that case, Mobley has a pending charge of violation of his supervised release. *Id.*, ECF 92.

distribute, not conspiracy to distribute.  However, the errors are of no legal significance; the "mistakes were minor, immaterial to probable cause, and easily explained."  ECF 28 at 4, n.1.

To clarify, Mobley was charged in 2010 in Case BEL-10-0686, ECF 16.  But, the conviction did not occur until 2012.  In a Superseding Indictment filed on June 28, 2011 (*id.*, ECF 39), Mobley was charged with conspiracy to distribute five kilograms of cocaine and 28 grams of cocaine base (Count One), and with possession with intent to distribute (Count Two).  Mobley pleaded guilty in 2012 to the offense of possession with intent to distribute cocaine and cocaine base.  *Id.*, ECF 58.  In other words, Mobley was, in fact, charged with conspiracy, but he pleaded guilty to a related offense.

The Affidavit recounts surveillance conducted by law enforcement on April 22, 2020, when investigators observed Bailey engage in a suspected drug transaction with an individual later identified as Earl Charles.  ECF 28-1, ¶ 15.  Both individuals were seen in the parking lot of a Target store in Pikesville, Maryland.  *Id.*  Within minutes of the conclusion of a suspected drug transaction, Baltimore County Police conducted a traffic stop of the vehicle in which Charles was a passenger.  *Id.* ¶ 16.  A canine alerted to the odor of narcotics and the vehicle was searched.  *Id.* ¶ 16.  Under the front passenger seat, officers located a bag containing marijuana.  *Id.*  Drug paraphernalia and a Glock Model 22 .40 caliber semi-automatic pistol, loaded with 13 rounds, were recovered from the rear passenger seat area.  *Id.*  A backpack with a digital scale, as well as prescription bottles with Charles's name on them, were found on the rear passenger seat.  *Id.*  In a search incident to Charles's arrest, drugs were recovered from him that contained fentanyl, heroin, and tramadol.  *Id.* ¶ 17.

Charles's cell phone was searched pursuant to a warrant, and it revealed communications with Bailey's phone at pertinent times, including right before the suspected drug transaction.  *Id.*

¶ 18.  Moreover, Charles subsequently pleaded guilty in the Circuit Court for Baltimore County to drug possession and possession of a loaded handgun.  ECF 28-1 at 15, n.1.

Investigators also determined that Bailey and Joseph Grigsby travelled to Philadelphia during the overnight hours of May 26 and May 27, 2020.  *Id.* ¶ 21.  Their travels were documented electronically and through physical surveillance.  *Id.* ¶ 20.  Bailey travelled in a rental vehicle—a black Ford F-150—while Grigsby used a blue Honda CR-V.  *Id.* ¶ 21(c).  Notably, the two "vehicles appeared to be driving in tandem, at or below the speed limit . . . ."  *Id.*  Conyers averred, *id.* ¶ 21(i): "I know, based on my training and experience, that DTOs sometimes use so-called "trail cars" to "protect" a vehicle carrying narcotics and to alert the DTO if the vehicle carrying narcotics is interdicted by law enforcement."

Also of significance, the trip to and from Philadelphia was quite short.  It began at approximately 8:30 p.m. on May 26, 2020, and by 11:30 p.m. both vehicles were back in Baltimore County, driving southbound on I-95.  *Id.* ¶¶ 21(a), (c).  By 12:05 a.m. on May 27, 2020, the two vehicles were observed at the parking lot of a Royal Farms store in Owings Mills, Maryland.  *Id.* ¶ 21(d).  Surveillance footage captured both vehicles as well as Bailey and Grigsby.  And, it appeared to law enforcement that Bailey made a transfer of an item from the F-150 to the CR-V.  *Id.* ¶¶ 21(d), (e), (f); *Id.* at 16 n.2.

By that point in time, a covert video recording device had been placed in the hallway of the second floor of the Heath Street Lofts, located at 111 West Heath Street in Baltimore.  *Id.* ¶ 21(g) n.3.  At 1:08 a.m. on May 27, 2020, the video recording device captured Bailey entering Apartment 206, carrying a light brown box.  *Id.* ¶ 21(g).  Investigators believed Bailey was using the unit as a stash location for drugs.  *Id.*  He was seen on camera exiting the apartment at 1:19 a.m.  *Id.*  Then, at 1:22 a.m., both Bailey and Mobley entered the apartment.  *Id.*  They left the

apartment at 2:13 a.m., with Bailey carrying a white plastic bag.  *Id.*[6]  At approximately 2:14 a.m., Mobley proceeded to a Chevy Tahoe with Maryland tag number 8EA4088, and left the area.  *Id.* ¶ 21(h).  MVA records indicated that the vehicle is registered to Mobley.  *Id.*

Relying on his training and experience, Conyers opined that Grigsby and Bailey travelled to Philadelphia for a "drug supply trip . . . ."  *Id.* ¶ 37.  That conclusion was "[b]ased on the late night timing and brief duration" of the trip to Philadelphia, as well as the use of the two vehicles for the trip, the manner in which the two vehicles were operated, and the events at the Royal Farms store.  *Id.* ¶¶ 21(i), (j).  According to Conyers, the "brief parking-lot meeting" was "consistent with a narcotics-related exchange."  *Id.* ¶ 21(j).  As to the subsequent entry into Apartment 206 at the Heath Street Loft, Conyers averred, ECF 28-1, ¶ 21(k):  "Specifically, I believe that BAILEY brought narcotics into the apartment, that BAILEY and MOBLEY then stored or packaged the narcotics for distribution, and that BAILEY then brought distribution-ready narcotics out of the apartment."

In addition, the Affidavit summarized a trip that Bailey, Grigsby, and another individual took to Philadelphia during the overnight hours of July 13 and July 14 of 2020, ECF 28-1, ¶ 22. Two vehicles, the CR-V and a Chevrolet Tahoe, again drove "in tandem, at or below the speed limit . . . ."  *Id.* ¶ 22(a).  Upon returning to Maryland, the two vehicles proceeded at 12:22 a.m. on July 14, 2020, to a Royal Farms Store in Owings Mills.  *Id.* ¶ 22(b).  The Affiant again opined that the vehicles traveled to Philadelphia to obtain narcotics.  *Id.* ¶ 22(f).

---

[6] The parties' submissions include still photographs of Mobley and Bailey in the hall, outside Apartment 206.  *See* ECF 16 at 25-27; ECF 28 at 16-17.

During the overnight hours of July 25 and July 26, 2020, Bailey again traveled to Philadelphia. *Id.* ¶ 23. And, an interception of Bailey's cell phone on that occasion showed that he directed Grigsby to meet him at the same Royal Farms location. *Id.* ¶ 23(a).

Also of relevance here, Conyers provided several reasons in the Affidavit to support his belief that Apartment 206 was used as a stash location for narcotics. First, and critically, he stated that law enforcement conducted a search of Apartment 206 on November 16, 2020, *i.e.*, about a month before the execution of the search warrant at defendant's home. *Id.* ¶ 21(1). At that time, law enforcement recovered suspected fentanyl, MDMA, and about 75 grams of suspected heroin. *Id.* In addition, law enforcement seized cutting agents used by drug traffickers "to dilute narcotics" and to increase the "volume of their products . . . ." *Id.* Three hydraulic presses were also recovered, which "are used by drug traffickers to compress drugs into brick-sized packages for more efficient transportation . . . ." *Id.*[7]

Second, Conyers recounted interaction between Bailey and Grigsby on May 5, 2020, in the vicinity of Grigsby's residence, which investigators believed constituted a drug transaction. ECF 28-1, ¶ 33. On that date, investigators observed Grigsby "retrieve a black bag" from his Honda CR-V and enter the passenger side of Bailey's Ford F-150 with the black bag. *Id.* ¶ 33(f). He then exited shortly thereafter, without the bag, and entered his residence. *Id.* About 30 minutes later, surveillance camera footage from the Heath Street location captured Bailey entering the building, carrying what appeared to be the same black bag that Grigsby had previously carried. *Id.*, ¶ 33(g). The surveillance camera also showed Bailey walking towards Apartment 206. *Id.*

---

[7] The Affidavit does not indicate the visibility of these items, where they were found, or whether Apartment 206 contained any indicia that it was also used as a residence.

Third, on October 26, 2020, at about 6:30 p.m., law enforcement intercepted a phone conversation between Bailey and a suspected coconspirator. *Id.* ¶ 63. Based on Conyers's experience, he believed the conversation concerned a narcotics transaction. *Id.* ¶ 64. About 30 minutes later, the surveillance camera captured Bailey carrying what appeared to be a package into Apartment 206 at the Heath Street location. *Id.* ¶ 65. Bailey left the apartment at about 8:02 p.m. *Id.* ¶ 65.

Investigators also intercepted text messages between Bailey and an unknown male on November 4, 2020, which began at 6:03 p.m. *Id.* ¶ 80. Conyers believed the text exchange involved a narcotics transaction for 100 grams of heroin. *See id.* ¶¶ 81, 82. At 7:30 p.m., the surveillance camera at the Heath Street location captured an individual, believed to be Bailey, again entering Apartment 206. *Id.* ¶ 85. Bailey left eight minutes later. *Id.* Conyers averred, *id.* ¶ 87: "Based on my training, experience, and knowledge of the investigation, I believe that, following the intercepted communication between BAILEY and UM7961, BAILEY went to the Heath Street Lofts, acquired 100 grams of heroin, . . . and delivered it to UM7961."

In addition, the Affidavit contains information about defendant's connection to the Kirkwood Road residence. *See id.* ¶¶ 103-105. In particular, he was observed at the premises on May 27, 2020. Notably, that was the same date that he was captured by video surveillance at the drug stash location. And, his vehicle was at the residential location on July 6, 2020. *Id.* Moreover, defendant's United States Probation Agent, assigned to supervise him while he is on supervised release for his second federal conviction, confirmed that defendant resided at the Kirkwood Road location. *Id.* ¶ 106.

As noted, the search warrant for defendant's residence was issued on December 15, 2020. That was approximately seven months after May 27, 2020. And, May 27, 2 020, was the "single

occasion" mentioned in the Affidavit when Mobley was seen at the Heath Street location.  ECF 16 at 3.  But, the search warrant was sought about one month after the search of the Heath Street location, which clearly established that Apartment 206 was used as a stash location.

As indicated, the Affidavit is a consolidated one, pertaining to multiple individuals. Conyers failed to include in the Affidavit pertinent information of which he was aware about Mobley.  In particular, Mobley was captured on the surveillance camera outside the stash location (Apartment 206) on July 14, 2020, and again on August 6, 2020.  ECF 28 at 19.  And, Mobley personally used a key to unlock Apartment 206 on July 14, 2020.  *Id.* at 20.

The Indictment (ECF 1), filed on September 28, 2021, names only Mobley as a defendant. In a separate case, an indictment was issued in November 2020 in connection with the drug investigation discussed in the Conyers's Affidavit.  *See* ELH-20-0383, ECF 1.  Initially, that indictment named only one person.  *See id.*  But, a Superseding Indictment filed in March 2021 charged twelve individuals with drug conspiracy and related charges.  *Id.*, ECF 10.  And, a Second Superseding Indictment was filed in that case on May 12, 2022.  *Id.*, ECF 275.  Mobley is not charged in case ELH-20-0383.[8]

## II.  The Contentions

The defendant lodges numerous challenges to the warrant.  Generally, he contends that the Conyers Affidavit "utterly failed to explain the basis for [Conyers's] belief that Mr. Mobley stored or packaged drugs."  ECF 16 at 8.  Indeed, defendant claims that because the conclusion "is bereft of any explanation whatsoever," the assertion amounts to "pure speculation—not investigative fact."  *Id.* at 9.

---

[8] Several defendants in that case has pleaded guilty.

Mobley point out that "there are only three general facts [in the Affidavit] relating to Mr. Mobley:  (1) his criminal history; (2) law enforcement officers' observations of his entering and exiting the Kirkwood premises on May 27, 2020, and July 6, 2020; and (3) his presence at the Heath Street Lofts on May 27, 2020." *Id.*

Defendant posits that Conyers made a "baseless conclusion" when he speculated that defendant packaged narcotics while inside Apartment 206 on May 27, 2020. *Id.* at 15.  As defendant puts it, "the single isolated observation of Mr. Mobley outside Apartment 206 on May 27, 2020—approximately 7 months before the issuance of the Search Warrant—" does not establish probable cause as to his involvement in the drug trafficking scheme.  *Id.* at 11.

Further, Mobley underscores that important facts are absent from the Affidavit as to him. For example, Mobley points out that there were no controlled purchases involving him; no informants who referenced him; no anonymous tips; no intercepted telephone calls involving him; no review of toll records of his communications; no counter surveillance tactics pertaining to Mobley; no trash pulls, *id.* at 10; and Mobley was never seen "holding any evidence."  *Id.* at 11.

Even assuming, *arguendo*, that the Affidavit is sufficient to establish probable cause that Mobley was involved in a drug scheme, defendant argues that the facts fail "to establish a nexus between the Kirkwood premises and the evidence to be seized."  ECF 16 at 12.  To the extent that defendant packaged drugs in Apartment 206, defendant underscores that the conduct has nothing to do with the Kirkwood premises.  *Id.* at 15.

Moreover, Mobley complains that the Affidavit was based on stale facts.  *Id.* at 17.  He contends that the Affidavit is devoid of facts to show why Conyers believed any evidence would be found at defendant's residence seven months after defendant was sighted outside Apartment

206. *Id.* at 19.  And, he maintains that the "continuous and ongoing activity exception does not apply." *Id.*

In addition, Mobley maintains that the Affidavit is so deficient in establishing probable cause that it cannot be saved by the good faith exception to the exclusionary rule, as set forth in *United States v. Leon*, 468 U.S. 897 (1984), and its progeny.  *Id.* at 21-24.  In his view, the Affidavit was "bare bones," *id.* at 23, with "no *indicia* of probable cause. . . ." *Id.* at 24.

In sum, the defendant complains that the Affidavit merely puts him in the vicinity of someone who was suspected of drug trafficking, and then only on one occasion.  ECF 32 at 4. Thus, he argues that the search warrant violated "the spirit" of the Fourth Amendment based on "an invasive conclusion from such innocuous facts . . . ." *Id.* at 5.

As expected, the government disagrees.  In its view, the Affidavit established probable cause to search defendant's residence.

To begin, the government asserts that the Affidavit readily establishes the drug trafficking activity of Bailey and his use of Apartment 206 as a stash location.  ECF 28 at 6-12, 23-24.  The government underscores that investigators reasonably concluded that Bailey was resupplied with drugs on May 27, 2020, and it emphasizes that defendant entered the stash location, Apartment 206, immediately thereafter.  *Id.* at 23-24.  The government also maintains that the issuing judge was entitled to consider defendant's conduct in light of his two prior federal drug convictions.  *Id.* at 24.  It posits that the "'officers need not rule out a suspect's innocent explanation for suspicious facts to obtain a warrant.'"  *Id.* (quoting *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (internal quotation marks omitted).   Moreover, the government insists that the Affidavit established a nexus between defendant's residence and the evidence to be seized, *id.* at 26-29, and that the facts were not stale.  *Id.* at 29-31.

Alternatively, the government relies on the good faith doctrine. *Id.* at 31-32. Although the government contends that good faith is readily established, it posits that the Court is also entitled to consider information that Conyers knew about defendant's conduct, but which he inadvertently omitted from his Affidavit. As discussed, *infra*, this contention is vigorously challenged by the defendant, for several reasons.

### III. Discussion

### A.

The Fourth Amendment to the Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourth Amendment protects against unreasonable searches and seizures. *See*, *e.g.*, *Utah v. Strieff*, 579 U.S. 232, 237 (2016); *United States v. Mendenhall*, 446 U.S. 544, 551 (1980). Therefore, under the Fourth Amendment, "all searches and seizures must be reasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011). And, "the ultimate touchstone of the Fourth Amendment is reasonableness." *Fernandez v. California*, 571 U.S. 292, 298 (2014) (internal quotation marks omitted).

In *United States v. Lyles*, 910 F.3d 787, 795 (4th Cir. 2018), the Fourth Circuit observed: "Reasonableness has many dimensions. One must be proportionality between the gravity of the offense and the intrusiveness of the search." Moreover, "[t]he magnitude of the intrusion relative to the seriousness of any offense 'is of central relevance to determining reasonableness[.]'" *Id.* at 796 (quoting *Maryland v. King*, 569 U.S. 435, 446 (2013)).

As noted, defendant's home was subjected to a search.  To be sure, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . ." *United States v. United States District Court (Keith)*, 407 U.S. 297, 313 (1972); *see Lyles*, 910 F.3d at 793.  "'At the very core'" of the Fourth Amendment "'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  Indeed, "when it comes to the Fourth Amendment, the home is first among equals."  *Florida v. Jardines*, 569 U.S. 1, 6 (2013).  As a result, "the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  *Silverman*, 365 U.S. at 511.  As the *Lyles* Court said, 910 F.3d at 793-94:  "Castles, of course, are not impregnable, but neither are they lightly breached, thus giving rise to the Fourth Amendment requirement of a warrant supported by probable cause."

A judicially authorized warrant is the cornerstone of the Fourth Amendment.  Its "purpose is to gather evidence necessary to determine whether a crime has been committed, and if so by whom."  *United States v. Orozco*, 41 F.4th 403, 408 (4th Cir. 2022).  To be constitutionally valid, a search warrant must be supported by probable cause to believe that contraband, evidence of a crime, fruits or instrumentalities of a crime, or a person subject to arrest, will be found at the location to be searched.  F. R. Crim. P. 41(c); *Florida v. Harris*, 568 U.S. 237, 243 (2013); *United States v. Grubbs*, 547 U.S. 90, 96 (2006); *United States v. McNeal*, 818 F.3d 141, 150 (4th Cir. 2016); *United States v. DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004).

Defendant maintains that the search warrant was defective because, *inter alia*, it did not establish probable cause that he was engaged in illegal conduct.  The concept of probable cause "defies a precise definition[.]"  *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010).

But, of import here, probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014); *see District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018).

Probable cause is a flexible standard and a "fluid concept," *Maryland v. Pringle*, 540 U.S. 366, 370 (2003), which is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see United States v. Ventresca*, 380 U.S. 102, 108 (1965); *United States v. Drummond*, 925 F.3d 681, 687 (4th Cir. 2019); *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011). It is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Pringle*, 540 U.S. at 370 (citations omitted; some internal quotation marks omitted); *see Gates*, 462 U.S. at 231; *Brinegar v. United States*, 338 U.S. 160, 176 (1949); *see also United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (stating that probable cause "is not defined by bright lines and rigid boundaries."). Notably, it "has long been understood to encompass circumstances that, while less than a preponderance, 'warrant suspicion.'" *United States v. Gondres-Medrano*, 3 F. 4th 708, 714 (4th Cir. 2021) (citation omitted).

The Supreme Court and the Fourth Circuit have recognized that common sense must guide a judge who is asked to review a warrant request. The issuing judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see*, *e.g.*, *Orozco*, 41 F.4th at 407 (recognizing "deferential, commonsensical standard of review"); *see also United States v Wellman*, 663 F.3d 224, 228 (4th Cir. 2011); *United States v. Grossman,* 400 F.3d 212, 217 (4th Cir. 2005); *Williams*, 974 F.2d at 481.

In *Ventresca*, 380 U.S. at 108, the Supreme Court said:

> If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.  They are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.  A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Accord Ornelas v. United States*, 517 U.S. 690, 696 (1996); *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011); *United States v. Montieth,* 662 F.3d 660, 664 (4th Cir. 2011).

Of relevance here, the judge who is asked to issue a warrant must look at the totality of the circumstances, rather than a "'technical dissection'" of the circumstances.  *District of Columbia v. Wesby*, 138 S. Ct. at 588 (citation omitted).  In other words, to determine the existence of probable cause, the court does not consider each fact "'in isolation' . . . ."  *Id.* (citing *Pringle*, 540 U.S. at 372, n.2); *see Drummond*, 925 F.3d at 687.  "The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'"  *Wesby*, 138 S. Ct. at 588 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)); *see Drummond*, 925 F.3d at 687.  Rather, "'the whole picture'" must be considered, because "the whole is often greater than the sum of its parts . . . ."  *Wesby*, 138 S. Ct. at 588 (citation omitted).

In the face of a challenge to a warrant, the reviewing court must determine if the issuing judge had a "substantial basis" for concluding that the evidence sought would be discovered in the place described in the application.  *Gates*, 462 U.S. at 236; *see United States v. Hodge,* 354 F.3d 305, 309 (4th Cir. 2009); *United States v. Bynum*, 293 F.3d 192, 202 (4th Cir. 2002).   In *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam), the Supreme Court said: "The task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the Magistrate's decision

to issue the warrant." Notably, an "overly stringent" construction of probable cause is not required. *United States v. Dargan*, 738 F.3d 643, 648 (4th Cir. 2013).

And, to effectuate the preference for warrants, "great deference" is accorded to the issuing judge's determination. *Gates*, 462 U.S. at 236; *see Orozco*, 41 F.4th at 408; *Smith v. Munday*, 848 F.3d 248, 255 (4th Cir. 2017); *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). Thus, the Supreme Court has "specifically cautioned against 'hypertechnical' scrutiny of affidavits lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson,* 275 F.3d 371, 380 (4th Cir. 2001) (quoting *Gates,* 462 U.S. at 236). Moreover, the probable cause standard does not "require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to fit in neatly, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information." *Taylor v. Farmer,* 13 F.3d 117, 121 (4th Cir. 1993).

On the other hand, there are "limits beyond which a magistrate may not venture in issuing a warrant," *Gates*, 462 U.S. at 239, and "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984); *see Smith*, 848 F.3d at 255. For example, wholly conclusory statements in a warrant application ordinarily will not suffice. *See Gates*, 462 U.S. at 239 (citing *Nathanson v. United States*, 290 U.S. 41 (1933) and *Aguilar v. Texas*, 378 U.S. 108 (1964)). The issuing judge's action cannot be a "mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. Nor can the government rely "upon post hoc rationalizations to validate those seizures that happen to turn up contraband." *United States v. Foster*, 634 F.3d 243, 249 (4th Cir. 2011). And, "'[p]olice officers generally have a duty to know the basic elements of the law they enforce.'" *United States v. Doyle*, 650 F.3d 460, 473 (4th Cir. 2011) (citation omitted).

As mentioned, defendant insists that the Affidavit does not establish probable cause of criminal conduct by him.  In this regard, Mobley points out that the Affidavit contains only a single reference to his conduct, and it does so without a factual basis to support the claim that his conduct was actually criminal in nature.  According to the defendant, there is no evidence set forth in the Affidavit to suggest from defendant's isolated conduct on May 27, 2020, outside Apartment 206, that his conduct was drug related.  He argues that his one visit to the alleged stash, beginning at 1:22 a.m. on May 27, 2020, lasting less than an hour, does not establish probable cause.

It is true that the Affidavit references only one instance when defendant went to the alleged stash house.  Nevertheless, probable cause does not require a certain quantum of criminal misconduct; it is not dependent on extensive involvement in drug trafficking.  That other individuals may have been more involved than defendant is of no moment.  And, that defendant "might propose an innocent explanation for his conduct does not defeat probable cause." *Orozco*, 41 F.4th at 408; *see Wesby*, 138 S. Ct. at 588; *see also United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (stating that "officers need not 'rule out a suspect's innocent explanation for suspicious facts' to obtain a warrant.")  (Citation omitted).

By focusing on the one occasion mentioned in the Affidavit , *i.e.*, when defendant was captured by video surveillance at Apartment 206 on May 27, 2020, defendant ignores the totality of circumstances that govern the analysis.  Indeed, defendant's position flies in the face of the teachings of *Wesby*, 138 S. Ct. 577, and other cases.  He focuses on facts in isolation, and not in context.  He looks at the tree, not the forest.  He has engaged in a "'technical dissection'" of the facts, while ignoring "'the whole picture,'" which "is often greater than the sum of its parts . . . ." *Id.* at 588 (citation omitted).

To clarify, the Affidavit lays out extensive evidence that Bailey and Grigsby were involved with others in the trafficking of drugs.  For example, the Affidavit recounts detailed facts concerning a suspected drug run to Philadelphia by Bailey and Grigsby on May 26 and May 27 of 2020, followed by a suspected drug exchange in the parking lot of a convenience store in the early morning of May 27, 2020.  Detailed information was also presented in the Affidavit to establish that Apartment 206 was used by Bailey as a stash house for drugs.  And, the timing of Mobley's visit to Apartment 206 is significant.  It occurred at 1:22 a.m. on May 27, 2020, shortly after the suspected drug exchange in the parking lot of the convenience store.  Mobley was inside the apartment for almost an hour.  These facts certainly lead to the reasonable inference that Mobley went to Apartment 206 for a drug-related purpose, and not merely to chat, visit, or watch television, as defendant suggests.

The magistrate judge was also entitled to consider that defendant has two prior federal drug convictions.  Defendant argues that his prior convictions are dated.  But, that does not mean that the magistrate judge could not consider them.  Nor were they truly dated.  That assertion overlooks the length of defendant's prison sentences.  Indeed, at the time, defendant was on supervised release for the second offense.  And, the magistrate could readily conclude that if the defendant's first federal conviction and lengthy sentence did not deter defendant from committing the second federal offense, then the second offense, which yielded another lengthy sentence, may not have deterred defendant from committing yet another drug offense.  As the Court said in *Bynum*, 293 F.3d at 197, information as to a target's prior criminal record "'is clearly material to the probable cause determination.'"  (Citation omitted); *see also United States v. Hodges*, 17-184, 2018 WL 934616, at *5 (S.D. W. Va. Feb. 16, 2018) ("[A] history of drug convictions indicates an increased likelihood that officers would find evidence of illicit drug activity.").

The Affidavit need not be a model of perfection to pass constitutional muster.  It recounts an extensive investigation of a drug trafficking scheme involving many people with different degrees of involvement.  As to Mobley, the facts set forth are sufficient to have led the magistrate judge to conclude that there was probable cause to believe that Mobley had a role in the drug trafficking scheme.

**B.**

Defendant also contends that the search warrant was constitutionally invalid because it did not establish a nexus between his residence and any evidence of the crime.  This argument fails.

To be valid, a warrant affidavit must establish a sufficient nexus between the place to be searched and the suspected criminal activity.  *Orozco*, 41 F.4th at 409: *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011).  To be sure, "[p]robable cause to believe that a person engaged in criminal activity is not *carte blanche* to search all their personal effects."  *Orozco*, 41 F.4th at 409.  As the Fourth Circuit explained in *United States v. Cobb*, 970 F.3d 319, 326 (4th Cir. 2020), the Fourth Amendment "'specifies only two matters that must be 'particularly described' in the warrant:  'the place to be searched and 'the persons or things to be seized.'"  (Quoting *Grubbs*, 547 U.S. at 97); *see also United States v. Blakeney*, 979 F.3d 851, 862 (4th Cir. 2020).

A warrant must establish probable cause for the belief that the suspect occupies or is otherwise connected to the targeted premises and that contraband or evidence will be found in that particular place.  *Cobb*, 970 F.3d at 326; *see Gates*, 462 U.S. at 238; *United States v. Dargan*, 738 F.3d 643 647 (4th Cir. 2013); *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012); *Montieth*, 662 F.3d at 664.  But, again, this is a "'practical commonsense determination' to be made by the issuing judge."  *Orozco*, 41 F.4th at 409 (citation omitted).

"At its core, the Fourth Amendment protects against general warrants that authorize 'exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized.'" *United States v. Williams,* 592 F.3d 511, 519 (4th Cir. 2010) (citing *Andresen v. Maryland,* 427 U.S. 463, 480 (1976) (internal quotation marks omitted)); *accord Dargan*, 738 F.3d at 647. The purpose of the particularity requirement is to ensure "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging explanatory searches the framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84 (1987). "Thus, when executing a warrant, officers are limited by its terms." *Dargan,* 738 F.3d at 647; *see also United States v. Uzenski*, 434 F.3d 690, 706 (4th Cir. 2006) (citations and internal quotations omitted) (The law forbids "'a general, exploratory rummaging in a person's belongings . . . .'"); *United States v. Robinson*, 275 F.3d 371, 381 (4th Cir. 2001). Therefore, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quotation and citation omitted).

However, the Fourth Circuit has "long held that an affidavit need not directly link the evidence sought with the place to be searched." *United States v. Jones*, 942 F.3d 534, 639 (2019); *see United States v. Ortiz*, 722 U.S. 891, 897 (1975). Rather, "'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.'" *Doyle*, 650 F.3d at 471 (citation omitted); *see Orozco*, 41 F.4th at 409 (same); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988), *cert. denied*, 488 U.S. 1031 (1989); *see also United States v. Trice*, 621 Fed. App'x 151, 153 (4th Cir. 2015) (per curiam); *United States v. Moore*, 477 Fed. App'x. 102, 105 (4th Cir.

2012); *Richardson*, 607 F.3d at 371; *United States v. Williams*, 548 F.3d 311, 320 (4th Cir. 2008); *Grossman*, 400 F.3d at 217.

Of relevance here, "officers may draw conclusions from their experience, judgment, and observations when identifying the place to be searched." *United States v. Wienke*, 733 Fed. App'x 65, 69-70 (4th Cir. 2018); *see also Ortiz*, 422 U.S. at 897 (stating that "officers are entitled to draw reasonable inferences from the[] facts in light of their knowledge of the area and their prior experience. . . ."); *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975) (concluding that "the officer is entitled to assess the facts in light of his experience. . . ."); *Grossman*, 400 F.3d at 217. So, for example, the Fourth Circuit has said that it was reasonable to infer that a computer used to distribute child pornography would be found at the defendant's home. *Richardson*, 607 F.3d at 371.

The Fourth Circuit observed in the 2008 *Williams* case, 548 F.3d at 319, that it has "consistently determined that there was probable cause to support search warrants" for suspects' residences "on the basis of 1) evidence of the suspects' involvement in drug trafficking combined with 2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their homes." The Court concluded that "the district court erroneously discounted [the agent's] assertion of training and experience based knowledge to tie [the defendants'] drug trafficking activities to their residences." *Id.* at 320.

In the 1992 *Williams* case, 974 F.2d at 480, the affidavit in support of the warrant established that the defendant had a criminal history involving drug trafficking; his car contained drug residue and a knife; and he had a receipt for a motel room. The Court rejected the defendant's claim that the warrant did not support a search of the motel room. *Id.* at 482. It said, *id.* at 481:

"With this evidence before him, the magistrate must consider, in light of all of the surrounding circumstances, the likelihood that drug paraphernalia would be found in the motel room of a known drug dealer."

The Fourth Circuit has said that "it is reasonable to suspect that a drug dealer stores drugs in a home" for which he possesses a key. *Grossman*, 400 F.3d at 218.   And, in *Anderson*, 851 F.2d 727, the Court determined that probable cause existed to search a trailer for weapons, even though the affidavit did not include facts indicating that weapons were in the trailer. *Id.* at 729. The Court agreed with the reasoning articulated in cases from other circuits that found that probable cause can be established based on the nexus between the place to be searched, the kind of items to be seized, and the normal inferences of where one would likely keep such items. *Id.*

And, courts in other circuits have also said that it is reasonable to infer that evidence of a suspect's involvement in the drug trade is likely to be found where the suspect resides. *See, e.g., United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999); *United States v. Henson*, 123 F.3d 1226, 1239 (9th Cir. 1997); *see also United States v. Jacobs*, 715 F.2d 1343 (9th Cir. 1983) (concluding that it was reasonable for magistrate to determine that articles of clothing could be found at suspect's residence); *United States v. Steeves*, 525 F.2d 33 (8th Cir. 1975) (concluding that people who own weapons generally keep them at home); *United States v. Rahn*, 511 F.2d 290 (10th Cir.) (finding it reasonable to assume that individuals store their weapons at home), *cert. denied,* 423 U.S. 825 (1975).

The Affidavit established that defendant resided on Kirkwood Road in the Woodlawn area of Baltimore.   Conyers also averred that drug traffickers use cell phones and other electronic devices to effectuate their drug trafficking activities, ECF 28-1, ¶ 12(a), and maintain various records and contraband in their residences. *Id.* ¶¶ (d), (e).  And, the magistrate judge was entitled

to infer from the facts that contraband and evidence of drug dealing would be found at the defendant's residence.  For example, the Affidavit described defendant's vehicle parked outside his residence during the evening of May 27, 2020.  ECF 28-1 at 64, ¶ 104.  Of import here, just hours earlier, on that very date, defendant was observed at the stash house.  *Id.* ¶ 21(g).

Moreover, the warrant application sought authorization to search for and seize documents, records, currency, digital devices, and other similar non-drug evidence. *See* ECF 28-3. The affiant explained that, based on his training and experience, individuals involved in the distribution of narcotics typically store various kinds of non-drug evidence at their residences. *See* ECF 28-1, ¶¶ 12.a. – 12.j.  This type of evidence includes cell phones; books, records, receipts, and ledgers relating to drug trafficking; proceeds from drug transactions; photographs or videos of coconspirators; drug proceeds; and documents containing the identities and contact information of coconspirators.   As set forth earlier, courts have consistently ruled that such statements of knowledge, based on an affiant's training and experience in drug investigations, support the determination that a sufficient nexus exists between a suspected drug trafficker's residence and records of drug trafficking.

## C.

Defendant contends that the search warrant application was defective because it was based on stale information.  In particular, even crediting the affiant's recitation of defendant's presence at a stash house on May 27, 2020, he points out that the incident occurred about seven months before the warrant was obtained.  In my view, the staleness claim lacks merit.

In evaluating a staleness challenge, the "fundamental inquiry is whether the alleged facts are so dated that, at the time of the search, it is doubtful that evidence of criminal activity can still be found at the premise searched." *United States v. Johnson*, 865 F. Supp. 2d 702, 705 (D. Md.

2012) (citing *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984)). Although "'time is a crucial element of probable cause,' . . . the existence of probable cause cannot be determined 'by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" *Richardson*, 607 F.3d at 370 (quoting *McCall*, 740 F.2d at 1335-36).

"Staleness . . . is not a rigid concept; it depends on the particular circumstances of the case." *Behrel v. Maryland*, 151 Md. App. 64, 88, 832 A.2d 696, 710 (2003), *cert. denied*, 376 Md. 576, 831 A.2d 5 (2003). Thus, "[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (citation omitted). Courts must take into account "'all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized.'" *Richardson*, 607 F.3d at 370 (quoting *McCall*, 740 F.2d at 1336).

The Maryland Court of Special Appeals colorfully explained in *Andresen v. State*, 24 Md. App. 128, 172, 331 A.2d 78, 106 (1975) (emphasis added), *aff'd*, 427 U.S. 463 (1976):

> The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. *The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock:* the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), *of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?),* of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

For example, "[i]n the context of child pornography cases, courts have largely concluded that a delay—even a substantial delay—between distribution and the issuance of a search warrant does not render the underlying information stale." *Richardson*, 607 F.3d at 370. Such "consensus rests on the widespread view among the courts . . . that 'collectors and distributors of child

pornography value their sexually explicit materials highly, "rarely if ever" dispose of such material, and store it "for long periods" in a secure place, typically in their homes.'" *Id.* (quoting *Lacy*, 199 F.3d at 746); *see, e.g.*, *United States v. Ramsburg*, 114 Fed. App'x 78 (4th Cir. 2004) (per curiam) (rejecting claims of staleness because "the instrumentalities of the alleged illegality tend to be retained").

It is widely agreed that "the age of information supporting a warrant is increasingly irrelevant when the object searched is stored on a computer." *Johnson,* 865 F. Supp. 2d at 707. This is because "evidence on a computer is recoverable months or years after it has been downloaded, deleted, or viewed." *Id.*; *see also United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [the defendant's] computer, even if he had tried to delete the images).

As indicated, the warrant sought computers and digital storage media as well as paper records. *Id.* at 65, ¶ 107.  Conyers averred that electronic information "can be recovered months or even years" after it is downloaded. *Id.* ¶ 109.  In my view, the evidence that was sought is not the kind of evidence that grows stale during the passage of just a few months.

### D.

In sum, I am satisfied that the Affidavit established probable cause to search defendant's residence.  But, even if the search warrant were not supported by probable cause, this does not end the inquiry.  Assuming, *arguendo*, that the Affidavit does not establish probable cause as to Mobley, the Court must then consider whether the good faith doctrine applies.

### 1.

When a search warrant violates the Fourth Amendment, "evidence obtained in violation of the Fourth Amendment" may be inadmissible under the exclusionary rule, which is "a judicially

created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). The exclusionary rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231 (2011); *see United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017); *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014). It "'serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'" *United States v. McLamb*, 880 F.3d 685, 690 (4th Cir. 2018) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

The Supreme Court explained in *Davis,* 564 U.S. at 236: "Exclusion [of evidence] is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." (Citation omitted). Rather, its purpose is to "deter future Fourth Amendment violations." *Id.* at 236-37. However, exclusion exacts a "heavy toll" on "the judicial system and society at large." *Id.* at 237. Indeed, the Supreme Court has characterized exclusion as a "harsh sanction." *Id.* at 241. Therefore, it is used only as "the last resort . . . ." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). "Exclusion of evidence only is appropriate if the deterrence benefits of suppression outweighs the heavy societal costs of exclusion." *United States v. Wilks,* 647 F.3d 520, 523 (4th Cir. 2011).

Notably, deterrence "is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith'" pursuant to a search warrant issued by a judicial officer. *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (citation omitted); *see United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2015). Thus, the mere fact of a Fourth Amendment violation does not always require exclusion. *Herring*, 555 U.S. at 140; *Stephens*, 764 F.3d at 335.

Notwithstanding the importance of the exclusionary rule to Fourth Amendment jurisprudence, in *United States v. Leon*, 468 U.S. 897 (1984), and the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the Supreme Court recognized a good faith exception to the exclusionary rule.  The Court upheld the admissibility of evidence seized pursuant to a warrant subsequently determined to be invalid, so long as the "officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment."  *Leon,* 468 U.S. at 922.  The Court reasoned, *id.*:  "We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  *See Herring*, 555 U.S. at 145; *United States v. Fall*, 955 F.3d 363, 371 (4th Cir. 2020); *Lyles*, 910 F.3d at 796; *United States v. Thomas*, 908 F.3d 68, 73 (4th Cir. 2018); *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018); *Doyle,* 650 F.3d at 467; *United States v. Perez,* 393 F.3d 457, 461 (4th Cir. 2004).

The *Leon* Court determined that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon,* 468 U.S. at 918.  Moreover, the standard is an objective one.  In other words, suppression is not appropriate when "the police act with an objectively reasonable good-faith belief that their conduct is lawful."  *United States v. Rush*, 808 F.3d 1007, 1010 (4th Cir. 2015).  The *Leon* Court said, 468 U.S. at 926:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

In other words, "the culpability" of law enforcement is critical to the analysis.  *Herring*, 555 U.S. at 143.  "[E]vidence should be suppressed 'only if it can be said that the law enforcement

officer had knowledge, or may properly be charged with knowledge, that the search'" violated the Fourth Amendment. *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987) (citation omitted).

Under *Leon*, 468 U.S. at 922, there are four circumstances when exclusion of evidence remains the appropriate sanction, even if an officer "has obtained a warrant and abided by its terms." They are as follows: 1) if the magistrate or judge who issued the warrant was misled by information in an affidavit that the affiant knew was false or would have known but for his reckless disregard for the truth; 2) if the issuing magistrate wholly abandoned his judicial role; 3) the affidavit supporting the warrant is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; 4) the warrant is "'so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized ― that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923 (citations omitted). *See Wellman*, 663 F.3d at 228-29; *DeQuasie,* 373 F.3d at 519-520.

Defendant's contentions seem to implicate the third factor.[9] He argues, in essence, that the warrant was so "bare bones" as to put Conyers on notice that it was patently defective and to defeat good cause.

As indicated, "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable . . . [but] it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 458 U.S. at 922-23 (internal citation and footnotes omitted); *see also Thomas*, 908 F.3d at 70; *Stephens*, 764 F.3d at 335; *United States v. McKenzie-Gude*, 671 F.3d 452, 459 (4th Cir. 2011). However, "good faith does not mandate best practices." *United States v. Aigbekaen*, 943 F.3d 713, 725 (4th Cir. 2019).

---

[9] Defendant does not point to a specific factor.

Moreover, in *Sheppard*, 468 U.S. at 989-90, the Supreme Court said: "[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes him to conduct the search he has requested."  Similarly, the Eleventh Circuit has said:  "If a reasonable jurist [who issues the warrant] could believe in objective good faith that there was probable cause, obviously a reasonably well-trained officer could believe likewise." *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990).  Thus, ordinarily, a "'warrant issued by a magistrate . . . suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'"  *Leon,* 468 U.S. at 922 (citation omitted).

Nevertheless, a law enforcement officer has a duty to withhold from presentation an application for a warrant that a well trained officer would know failed to establish probable cause. *See Doyle*, 650 F.3d at 473.    Accordingly, notwithstanding "authorization" from a judge to conduct a search, good faith does not apply if a "reasonably well trained officer would have known that the search was illegal . . . ."  *Leon*, 468 U.S. at 922 n.23.  A reasonably well trained officer is also required to know "well-established current law."  *United States v. Hale*, 784 F.2d. 1465, 1470 (9th Cir. 1986); accord *Doyle*, 650 F.3d at 473; *see United States v. Savoca*, 761 F.2d 292, 297 (6th Cir.), *cert. denied*, 474 U.S. 852 (1985) (stating that a reasonably well trained officer would be aware of relevant court decisions).  On the other hand, when a law enforcement officer consults with the prosecutor before seeking a search warrant, that step is "indicative of objective good faith." *Taxacher*, 902 F.2d at 872.

*Lalor*, 996 F.2d at 1582, is instructive.  There, the Court said that "residential searches have been upheld only where some information links the criminal activity to the defendant's residence." The Fourth Circuit found the affidavit "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found" at the premises to be searched, because the affidavit

failed to describe circumstances to indicate that such evidence was likely to be stored at the defendant's residence. *Id.* Nevertheless, despite the failure of the warrant to establish a nexus between the drug activity and the location to be searched, the Fourth Circuit concluded that the warrant was not so lacking in probable cause that the officer's reliance upon it was objectively unreasonable. *Id.* at 1583. Thus, the finding of good faith was upheld. *Id.* at 1584. Compare *United States v. McCoy*, RDB-06-0449, 2007 WL 6846832, at *2 (D. Md. Oct. 24, 2007) (concluding that an affidavit "devoid of any specific evidence suggesting how the place to be searched is related to the criminal activity" is not cured by "generalized and unsubstantiated conclusions" as to where drug dealers store items for "safekeeping").

To summarize, "it is the magistrate's responsibility to determine whether probable cause exists, and officers [generally] cannot be expected to second-guess that determination in close cases." *United States v. Mowatt*, 513 F.3d 395, 404 (4th Cir. 2008), abrogated on other grounds by *Kentucky v. King*, 563 U.S. 452 (2011). So long as the officer's reliance on the warrant was objectively reasonable, evidence recovered pursuant to a search warrant issued by a neutral magistrate is not subject to exclusion. *Leon*, 468 U.S. at 922.

The government contends that it was objectively reasonable for Conyers to rely on the judicially authorized warrant, and that the good faith doctrine applies here. I completely agree.

**2.**

I have already determined that the search warrant is supported by probable cause as to Mobley. I then assumed, *arguendo*, that my conclusion as to probable cause is incorrect, and proceeded to the issue of good faith. And, I found that good faith applies, because it was objectively reasonable for Agent Conyers to rely on the judicially authorized warrant.

In the event that the finding of good faith is erroneous, the government contends that Conyers had ample additional evidence that he inadvertently omitted from the Affidavit. In its view, the Court may consider the extrinsic information to resolve the issue of good faith. The defense disagrees.

Agent Conyers testified that he submitted the Affidavit to Assistant United States Attorney ("AUSA") Jeffrey Izant for review, prior to submission of the search warrant application to the magistrate judge. ECF 57 at 58-61. And, AUSA Izant then sought supervisory approval. *Id.* at 60. So, according to Conyers, there were "two levels of approval" for the warrant application. *Id.* at 61.

This effort, if subject to consideration by the Court, would provide strong evidence of objectively reasonable reliance and good faith by Agent Conyers. *See McLamb*, 880 F.3d at 691; *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002); *see also United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011); *United States v. Martin*, 297 F.3d 1308, 1319 (11th Cir. 2002).

As discussed, the Affidavit reflects that Mobley met Bailey at the stash location in the early morning of May 27, 2020, shortly after Bailey made a suspected drug run to Philadelphia and a drug exchange at a convenience store in Owings Mills. But, Agent Conyers testified that he omitted from the Affidavit facts concerning Mobley's telephone contact with Bailey on that date. And, he omitted any reference to video surveillance that showed Mr. Mobley entering and exiting Apartment 206 – the stash location – on two additional occasions.

In particular, on July 14, 2020, at about 1:23 a.m., shortly after Bailey returned from another suspected drug run to Philadelphia, Mobley was seen on video at the stash apartment. ECF 57 at 34-39. Agent Conyers also omitted that defendant had and then used a key to open the door to Apartment 206 on July 14, 2020. *Id.* at 35-36. Defendant was also captured by video at the

stash location on August 6, 2020.  *Id.* at 40-43.  And, toll records showed telephone contact and text messages between defendant and Bailey on May 27, 2020.  *Id.* at 23-29.

Assuming, *arguendo*, that my ruling as to good faith is incorrect, the question is whether the Court may consider as to good faith the information recounted above, which was known to Agent Conyers at the time of submission of his Affidavit, but omitted by him from the Affidavit.

The defense asserts that, in order for the Court to consider the omitted evidence, the government must establish that such evidence 1) consists of uncontroverted facts; 2) known to the executing officers before execution of the search warrant; and 3) it was inadvertently omitted from the Affidavit by Conyers.  ECF 58 at 1.

Mr. Mobley does not dispute the omitted facts.  ECF 61 at 2.  But, he maintains that these facts are not "uncontrovertibly criminal in nature."  *Id.*  In his view, the government had to show that "these facts were consistent with drug-related activity."  *Id.* at 3.  Thus, as to the phone calls and visits by defendant to the alleged stash apartment, the defense maintains that the facts are merely "stand-alone facts that have no connection" to the good faith inquiry.  *Id.*  For example, Mobley highlights that Conyers could not testify to what occurred when Mobley was inside Apartment 206.  ECF 58 at 3, 5.  And, in his view, the evidence demonstrated that Apartment 206 could have been used as a residence.  *Id.* at 3.

Moreover, Conyers, the affiant, was not present when the warrant was executed at Mobley's residence.  ECF 57 at 89.  Therefore, defendant argues that the collective knowledge doctrine does not apply.  ECF 58 at 6.  In addition, defendant contends that, to the extent extrinsic information may be considered, it is limited to information pertaining to the "nexus" between the criminal activity and the place to be searched.  ECF 42 at 4.  And, defendant contends that the omission of facts was purposeful, not inadvertent.  ECF 61 at 7.

The government rejects each contention.

In *Bynum*, 293 F.3d 192, the Fourth Circuit said that a trial court "should not refuse to apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known to him *supporting* a finding of probable cause." *Id.* at 198-99 (emphasis in original). If the affidavit, as written, contains indicia of probable cause, that is sufficient. *Id.*

However, the Court determined that it did not need to resolve the "difficult question" of whether, in the good faith analysis, a court may consider facts omitted from an affidavit. *Id.* at 199. Nevertheless, the panel majority noted several out-of-circuit cases that have permitted consideration of information beyond the four corners of an affidavit. In commenting on the dissent's opposition to consideration of such information, the panel majority said that "to refuse to consider such information in making the *Leon* inquiry creates an anomaly," because "*Leon* itself renders admissible evidence obtained pursuant to a warrant supported by an affidavit that lacks probable cause." *Id.*

In *McKenzie-Gude*, 671 F.3d 452, the Court tackled head on the question of whether and when a trial court may consider information outside the four corners of the warrant, for purposes of deciding good faith. There, the defendant claimed that the search warrant for his home was constitutionally defective because it failed to link him to the residence. *Id.* at 457. The affidavit established that the defendant likely possessed illegal weapons at his home, and included the address of the home, but it omitted that defendant lived at the address in question. *Id.* at 457-58. The government conceded that the search warrant and the affidavit failed to provide the required nexus between the defendant and "the target residence." *Id.* at 458. Therefore, the government relied on the good faith exception. *Id.*

Judge Diana Motz, writing for the Court, observed, *id.* at 459:  "*Leon* instructs that the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of '*all of the circumstances*.'" (citation omitted) (emphasis in *McKenzie-Gude*).  The Court added, *id.*: "For this reason, we have consistently rejected the notion that reviewing courts may not look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable."  In the Court's view, "*Leon* presents no barrier to holding that the experienced officers . . . acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate." *Id.* at 460.

In addition, the Court reasoned that a court does not abandon "the objective inquiry required by *Leon* when it considers the uncontroverted *facts known* to the officer, which he has inadvertently failed to disclose . . . ."  *Id.* at 460 (emphasis in *McKenzie-Gude*).  The Court reiterated, *id.* at 461:  "[N]owhere does *Leon* find irrelevant actual uncontroverted facts known to—as opposed to subjective belief held by – an officer."  *See also Herring*, 555 U.S. at 145; *United States v. Campbell*, 677 F. App'x 838, 839 (4th Cir. 2017).

The case of *United States v. Thomas*, 908 F.3d 68 (4th Cir. 2018), is also instructive.  There, the defendant was arrested for a sex offense.  A Virginia state judge issued a search warrant for his cell phone, which led to the discovery of child pornography, and the defendant was subsequently charged with a federal offense.

The defendant challenged the legality of the search warrant, because the application omitted the date of the offense.  *Id.* at 71.  The defendant claimed that the affidavit did not link the phone to the offenses, and thus did not establish probable cause that evidence would be found in

the place to be searched.  *Id.*  Further, the defendant argued staleness, because the affidavit did not indicate when the offenses occurred.  *Id.*

The district court agreed that the affidavit did not establish probable cause.  *Id.* at 70.  But, the district court considered additional information known to the detective that gave "rise to an objectively reasonable belief that there was probable cause for the search."  *Id.*  Specifically, "by looking 'outside the four corners' of the affidavit," and considering "uncontroverted facts known to [the affiant] but inadvertently not presented to the magistrate," the district court found that *Leon's* good faith exception was applicable.  *Id.* at 71-72.

On appeal, the Fourth Circuit affirmed.  It said, *id.* at 70:  "Our precedents make clear that in assessing an officer's objective good faith in executing a search warrant, we may consider facts known to the officer, but inadvertently omitted from a warrant affidavit."

The Fourth Circuit reiterated that under *Leon* the court makes an "'objective inquiry' into officer good faith."  *Id.* at 73 (citing *McKenzie-Gude*, 671 F.3d at 460).  It characterized the "key" question as "'whether a reasonably well trained officer would have known that the search was illegal' in light of '*all of the circumstances.*'"  *Thomas*, 908 F.3d at 73 (emphasis in original) (citations and some quotation marks omitted).  The circumstances include "'specific, uncontroverted facts known to the officer[]'".  *Id.* (citation omitted) (alteration in *Thomas*).  The Court also reiterated that if an officer's "belief in the existence of probable cause is objectively reasonable," the officer "has no reason to second guess the magistrate's decision to issue a warrant, and acts in good faith when executing the search."  *Id.*

In addition, the *Thomas* Court addressed the issue of staleness.  It observed that although the affidavit "lacked any information about when the offenses and phone calls occurred, [the

affiant] knew that Thomas had visited a hotel with his victims and tried to contact their mother less than five months prior to the search, resolving any staleness issues . . . ." *Id.* at 74.

Based on the foregoing, I am satisfied that, under appropriate circumstances, a trial court may look outside the four corners of a warrant affidavit to resolve the issue of good faith. Therefore, I turn to defendant's contentions that, under the circumstances here, such information may not be considered.

**3.**

Defendant argues that consideration of extrinsic information is limited to the "nexus" between criminal activity and the place to be searched.  ECF 42 at 4.  But, the *Thomas* Court applied *McKenzie-Gude* as to both the nexus issue and the staleness claim.  Thus, the case law does not support defendant's narrow construction of the circumstances under which a court may consider information outside the four corners of an affidavit for purposes of the good faith analysis.

Mobley also contends that, unlike in *McKenzie-Gude*, the omitted allegations here are not uncontroverted.  He reasons that the omitted facts are essentially innocuous, and are not criminal or drug related, standing alone.  ECF 42 at 4; ECF 58 at 3; ECF 61 at 1.  In my view, the information known to Conyers was "uncontroverted" within the meaning of *McKenzie-Gude*.  ECF 46 at 7. The facts as to defendant's visits to the stash house, for example, were objective facts known to Conyers, and not a matter of subjective belief.

To be sure, the interpretation of these facts is controverted.  And, the facts, in a vacuum, are not plainly criminal.  But, "even objectively innocent activity may become suspicious . . . and an officer is entitled to rely on his experience regarding conduct consistent with criminal activity when judging the existence of a probable cause."  *United States v. Brown*, 481 F. App'x 853 (6th

Cir. 2012); *see, e.g.*, *United States v. Marion*, 238 F.3d 965, 969-70 (8th Cir. 2001); *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992).

The defendant's alternative explanation of the facts does not render the facts controverted within the meaning of *McKenzie-Gude*. Indeed, a drug conspiracy prosecution often turns on the interpretation of facts that, by themselves, could be seen as innocent.

Further, defendant contends that the omission of the facts was not inadvertent, as required by *McKenzie-Gude*, 671 F.3d at 461. In this regard, Mobley points to the testimony of Conyers, to the effect that he purposely and intentionally omitted the additional evidence from the Affidavit because he wanted to include only what was necessary to establish probable cause, and he believed his Affidavit was sufficient to establish probable cause. ECF 57 at 17, 61, 66.

The Affidavit itself makes clear that it does not include all facts known to the affiant. ECF 28-1, ¶ 4. Conyers testified that, in his estimation, he included "[j]ust enough [information] to reach the threshold of probable cause." ECF 57 at 17. With 33 requested warrants, *id.* at 61, 62, Conyers explained that he      sought "to be as concise as possible," and endeavored to include only "enough to reach the level of probable cause," because the volume of information would otherwise "overwhelm" the reader and render the document "unwieldy." *Id.* at 61. Moreover, he noted that the U.S. Attorney's Office was satisfied with the content. *Id.*

*United States v. Campbell*, 7:15-CR-00042, 2016 WL 727110 (W.D. Va., Feb. 22, 2016), provides guidance. There, the district court rejected the precise contention advanced here. In that case, the detective omitted information from his affidavit because he believed it was "sufficient as written." *Id.* at *7. On that basis, the defense claimed the omission was purposeful, not inadvertent, as required by *McKenzie-Gude*. In the court's view, *McKenzie-Gude* was "directly on point." *Id.* at *8.

38

The district court rejected the suggestion that the term inadvertent is synonymous only with unintentional or accidental. *Id.* Citing to the dictionary, Judge Urbanski stated that "the definition of 'inadvertently' is much broader than Campbell acknowledges." *Id.*

Moreover, in this case, as in *Campbell*, the defense "can point to no deliberate, reckless, or grossly negligent disregard" of the Fourth Amendment. *Id.* at *9. Nor was any omission made for the purpose of misleading the magistrate judge. Clearly, exclusion of the evidence would not further "'the purposes of the exclusionary rule.'" *McKenzie-Gude*, 671 F.3d at 461 (quoting *Leon*, 468 U.S. at 918).

Mobley also insists that the collective knowledge doctrine does not apply. He asserts that the omitted evidence was not known to the officers conducting the search, and thus *McKenzie-Gude* does not apply. ECF 42 at 3.

Conyers did not personally participate in the search of defendant's residence. ECF 57 at 61. As noted, 33 warrants were executed on the same day, involving hundreds of officers. *Id.* at 62, 74. As to defendant's residence, eighteen officers were involved in the search. ECF 42 at 3. Obviously, Conyers could not be at every location. But, he testified that he participated in the pre-search briefing of the officers who conducted the searches. *Id.* at 62-64, 74-78, 82-89. Team leaders were chosen for each location. *Id.* at 83. They were briefed on various topics. *Id.* And, the briefing included what the search team was "authorized to find . . . ." *Id.* at 86. DEA Special Agent Jeremy Gates participated in the search and was aware of the information in issue. *Id.* at 82, 86.

"[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually . . . conducting the search to be personally aware of those facts." *United States v. Laughman*, 618 F.2d 1067, 1072-73 (4th Cir.

1980); *see United States v. Ferebee*, 957 F.3d 406, 411 (4th Cir. 2020); *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011); *United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011).  Under the so called collective knowledge doctrine, "when an officer acts on instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action [him]self."  *Massenburg*, 654 F.3d at 492; *see also United States v. McCallister*, 2022 WL 1619029 (4th Cir. May 23, 2022) (per curiam); *United States v. Patituka*, 804 F.3d 684, 691 (4th Cir. 2015); *United States v. Herevia*, RDB-13-639, 2014 WL 4784321, at *5 (D. Md. Sept. 23, 2014).

I see no basis in this case to reject application of the collective knowledge doctrine.  The knowledge of Conyers, as the instructing officer, is properly imputed to the officers at the scene of the search of defendant's home.  *Massenburg*, 654 F.3d at 492.

## IV.  Conclusion

In its totality, the Affidavit shows that Bailey was involved in drug trafficking.  Moreover, Apartment 206 was clearly used by Bailey and others as a stash location.  And, that usage was established before the search of defendant's residence.

At 1:22 a.m. on May 27, 2020, shortly after Bailey made a suspected drug run to Philadelphia and then a suspected drug transaction at a convenience store in Owings Mills, defendant met Bailey at the stash house.  That the Affidavit recounts only one encounter by Mobley at the stash house, or shows others to be more culpable than Mobley, does not defeat probable cause as to Mobley.  Moreover, defendant had two prior federal drug convictions, and was on supervised release at the time.

Even if the facts in the Affidavit do not establish probable cause, the good faith doctrine applies.  The drastic sanction of exclusion would not serve the ends of justice, for the reasons already stated.

In addition, the omitted facts certainly strengthen both probable cause and good faith.  They add the proverbial icing to the cake. Significantly, Conyers sought legal guidance from an AUSA before submitting the warrant application, and the application was approved by the prosecutor and his supervisor, both of whom are versed in federal law.

The Motion is denied.  An Order follows.


Date:   September 8, 2022                              _____/s/_____
                                                      Ellen L. Hollander
                                                      United States District Judge